PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LISA AMAECHI,

  *Plaintiff-Appellee,*

v.

MATTHEW WEST,

  *Defendant-Appellant,*

and

BERNARD R. PFLUGER; TOWN OF
DUMFRIES,

  *Defendants.*

No. 00-1129

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-99-783-A)

Argued: November 2, 2000

Decided: January 9, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Michael and Chief Judge Anderson
joined.

_____

## COUNSEL

**ARGUED:** Robert S. Corish, BRANDT, JENNINGS, ROBERTS,
DAVIS & SNEE, P.L.L.C., Falls Church, Virginia, for Appellant.

Victor Michael Glasberg, VICTOR M. GLASBERG & ASSO-
CIATES, Alexandria, Virginia, for Appellee. **ON BRIEF:** John J.
Brandt, BRANDT, JENNINGS, ROBERTS, DAVIS & SNEE,
P.L.L.C., Falls Church, Virginia, for Appellant. Kelly M. Baldrate,
VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia,
for Appellee.

---

## OPINION

WILLIAMS, Circuit Judge:

Appellee Lisa Amaechi filed suit in the United States District Court
for the Eastern District of Virginia, Alexandria Division, against
Appellant Officer Matthew West in his individual capacity, pursuant
to 42 U.S.C.A. § 1983 (West Supp. 2000).[1] Amaechi sought damages
arising out of what Amaechi claims was a sexually intrusive search
executed upon her by West incident to her arrest for violation of a
town noise ordinance. The district court denied West's motion for
summary judgment based upon a defense of qualified immunity, rea-
soning that West's search, as described by Amaechi, violated
Amaechi's clearly established constitutional rights under the Fourth
Amendment. West ultimately disputes Amaechi's description of
West's search, presenting what the district court referred to as a "fac-
tual conundrum." (J.A. at 306). Because this is an interlocutory appeal
from the denial of qualified immunity on summary judgment, how-
ever, we must accept Amaechi's version of the facts surrounding the
search as true for purposes of this appeal.[2] *See Pritchett v. Alford*, 973
F.2d 307, 313 (4th Cir. 1992). Based upon Amaechi's characteriza-

---

[1]Amaechi also joined the Town of Dumfries, Virginia and Sergeant
Bernard Pfluger of the Dumfries Police Department in her § 1983 suit,
but the district court dismissed both parties on January 13, 2000.

[2]Indeed, if West challenged Amaechi's version of the facts for pur-
poses of his appeal, we would be without jurisdiction to resolve his qual-
ified immunity defense at this interlocutory stage. *See Johnson v. Jones*,
515 U.S. 304, 311, 319-20 (1995). In such a case, where genuine issues
of material fact exist, the officer is entitled to appeal the district court's
denial of his qualified immunity defense at the conclusion of trial, once
the factual issues have been resolved. *See id.*

tion of the search, we affirm the district court's denial of qualified immunity, and we remand for further proceedings.

## I.

Amaechi and her husband, a guard at the Lorton correctional facility, lived in a townhouse in Dumfries, Virginia. Amaechi's young children sometimes played music in the townhouse too loudly, causing neighbors to complain.[3] On August 10, 1997, Officer Stephen Hargrave, of the Dumfries Police Department, responded to a complaint from one of the Amaechis' neighbors about the loud music coming from the Amaechis' townhouse. Hargrave instructed Amaechi to turn down the music, and she did so. At that time, Hargrave told Amaechi that he would not arrest her unless he received another complaint about the noise level. Believing that Hargrave was unnecessarily impolite in his handling of the matter, Amaechi called the Prince William County Police Department and complained about Hargrave's conduct.[4] Hargrave discovered that Amaechi had registered a complaint against him later that afternoon. On August 12, 1997, without any further complaints about the noise level, Hargrave secured an arrest warrant charging Amaechi for the two-day old violation of the Town of Dumfries's misdemeanor noise ordinance.[5]

After 9:00 pm that night, Officer Pfluger took his trainee, West, and other officers to the Amaechis' townhouse to execute the arrest warrant.[6] When Pfluger and West knocked on the door, a nude Amaechi was in her bathroom preparing for bed. She covered herself with a house dress and followed her husband downstairs.[7]

---

[3]In August 1997, Amaechi's five children ranged in age from four to eleven years.

[4]Amaechi did not call the Dumfries Police Department because she believed it would "likely inappropriately protect its own." (Appellee's Br. at 5).

[5]Amaechi was never convicted of this offense. She resolved the dispute with her neighbor through mediation.

[6]This was West's first arrest of a woman. He resigned from the police force approximately six months later.

[7]The housedress was made of a light weight fabric, had spaghetti straps, and had buttonholes all the way down the front. It was missing all of its buttons from immediately below the chest, however, requiring Amaechi to gather the dress with her hand to keep it closed.

When Amaechi answered the door with her husband, Pfluger told her she was under arrest. Amaechi fully cooperated during the arrest, but when told that she was to be handcuffed, Amaechi pointed out to the officers that she was completely naked under the dress and requested permission to get dressed because she would no longer be able to hold her dress closed once handcuffed. This request was denied, and Amaechi's hands were secured behind her back, causing her dress to fall open below her chest.

Pfluger then turned to West, who was at the door with Pfluger, and told him to complete Amaechi's processing. West escorted Amaechi to the police car in her semi-clad state, walking past several officers on the way to the car. Amaechi proceeded to enter the back door of the car, which West had opened. West stopped her and told her that he would have to search her before she entered the car. Amaechi protested that she was not wearing any underwear, and West said, "I still have to search you." (J.A. at 33). West then stood in front of Amaechi, squeezed her hips, and inside her opened dress, "swiped" one ungloved hand, palm up, across her bare vagina, at which time the tip of his finger slightly penetrated Amaechi's genitals. Amaechi jumped back, still in handcuffs, and exclaimed, "I told you I don't have on any underwear." (J.A. at 40). West did not respond and proceeded to put his hand "up into [her] butt cheeks," kneading them. (J.A. at 41). West then allowed Amaechi to enter the car. This search took place directly in front of the Amaechis' townhouse, where the other police officers, Amaechi's husband, her five children, and all of her neighbors had the opportunity to observe.

On June 2, 1999, Amaechi filed a seven count complaint in federal district court, claiming money damages against West in his individual capacity, the Town of Dumfries, and Pfluger under 42 U.S.C.A. § 1983 (West Supp. 2000) and under state law for West's alleged sexually invasive search. Upon the close of discovery, all defendants moved for summary judgment. Amaechi voluntarily withdrew the count alleging the unconstitutionality of the Town of Dumfries' policy permitting her arrest for violation of the noise ordinance and the count alleging West's intentional infliction of emotional distress. The district court granted summary judgment on the three counts pertaining to Pfluger and the Town of Dumfries.[8] The district court, how-

---

[8]The district court held that Pfluger was not responsible for training West and that the town had properly discharged its duty to train West by

ever, denied West's motion for summary judgment as to the two counts against him and denied West's defense of qualified immunity.[9] West filed an interlocutory appeal with this Court.

## II.

The only issue we consider is whether the district court correctly denied West's summary judgment motion upon determining that West was not entitled to qualified immunity. We review the district court's ruling de novo. *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994). "Qualified immunity is an accommodation by the courts to the conflicting concerns of, on one hand, government officials seeking freedom from personal monetary liability and harassing litigation and, on the other hand, injured persons seeking redress for the abuse of official power." *Id.* at 162 (internal quotation marks omitted). To that end, qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, the steps are sequential; we "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all,'" before "'proceed[ing] to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286 (1999)). Accordingly, we address Amaechi's claim by focusing first on whether Amaechi's complaint has alleged a deprivation of her constitutional right to be free from an unreasonable search, and we then turn to whether that right was clearly established at the time of her arrest.

---

sending him to a state-approved law enforcement academy. The district court also dismissed the count against Pfluger charging wrongful arrest. Amaechi has not cross-appealed these rulings.

[9]The remaining charges against West allege an unconstitutional search and assault and battery.

A.

In relevant part, the Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Therefore, to be constitutional, a search must not be unreasonable. *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 653 (1995).

Amaechi contends that West's search, including the touching and penetration of her genitalia, was unreasonable in light of the circumstances surrounding the arrest. West argues, on the other hand, that Supreme Court precedent allows an officer, conducting a search incident to arrest, to effectuate a "*full search of the person.*" (Appellant's Br. at 16) (emphasis in original) (citing *United States v. Robinson*, 414 U.S. 218, 236 (1973)). West argues that this right to conduct a full search of the person under *Robinson* includes the right to briefly "swipe" the arrestee's outer genitalia and slightly penetrate the genitalia. (Appellant's Br. at 17-18).

We believe that West interprets *Robinson* too broadly.[10] *Robinson* did not, nor could it, rewrite the Fourth Amendment to exclude the explicit requirement that no search be unreasonable. Nor did *Robinson* hold that all searches incident to arrest, no matter how invasive, are inherently reasonable. To the contrary, since *Robinson*, the Supreme Court has continued to emphasize that Fourth Amendment jurisprudence prohibits unreasonable searches incident to arrest. *See, e.g.*, *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) ("[T]he interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street . . . ."). Therefore, to determine whether West's search of Amaechi is constitutional, it is not enough to conclude that it was a search incident to a valid arrest. Rather, we must determine whether the search was unreasonable.

---

[10]To demonstrate the breadth of the interpretation West gives to *Robinson*, counsel for West argued at the motions hearing before the district court that *Robinson* might permit an officer to examine a person's private areas and perform a cavity search in public, in a "measured way," regardless of the amount of time such a search required. (J.A. at 253-54).

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court established an analytical framework for determining the reasonableness of a sexually intrusive search.[11] *Id.* at 559. In *Bell*, the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed. *See id.* This balancing requires a court to conduct a contextual analysis to determine reasonableness by analyzing "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

West's search was highly intrusive without any apparent justification. Amaechi was arrested for a two-day old misdemeanor noise violation, she submitted to arrest peacefully, she advised the officers that she had on no underclothes, and she requested the officers to allow her to get dressed before being placed in handcuffs. Instead, the officers secured Amaechi's hands behind her back and made her walk to the car and stand in the street with her dress open and lower body exposed. West proceeded to search by touching and penetrating Amaechi's genitalia and kneading her buttocks with his ungloved hand. This invasive search was not conducted in a private holding cell but rather was conducted on the street in front of Amaechi's home, subject to viewing by Amaechi's family, the public, and the other officers. *Cf. Polk v. Montgomery Co., Md.*, 782 F.2d 1196, 1201-02 (4th Cir. 1986) ("[Whether the strip search was conducted in private] is especially relevant in determining whether a strip search is reasonable under the circumstances."). West does not allege that he con-

---

[11]West argues that *Bell v. Wolfish*, 441 U.S. 520 (1979), does not apply because West's search did not qualify as a "strip search." In support of his argument, West primarily relies upon the fact that West's search was very quick and, therefore, was not conducted with the requisite intent to constitute a strip search. Without deciding whether a strip search requires an element of intent, we note that whether West intended to strip search Amaechi is a question of fact for the trial court and is not properly resolved on summary judgment. Additionally, we note that *Bell* was not limited simply to strip searches but rather developed a flexible test to determine reasonableness that includes the concerns implicated by West's search of Amaechi. *See id.* at 558-59 (holding that courts must review the scope of the "invasion of personal rights that the search entails" to determine whether the search was reasonable).

ducted the search in such a manner because of a perceived threat to
his or the other officers' safety. *See generally Bell*, 441 U.S. at 559
(requiring a court to weigh the intrusiveness of the search against the
justification for conducting the search). In fact, West could not rely
upon any type of security justification for this search, in that the dress
was thin and was almost completely open, making any weapons
immediately apparent.[12] Nor did the possibility exist that Amaechi
would attempt to destroy or conceal evidence related to the noise vio-
lation. Because the invasiveness of Amaechi's search far outweighed
any potential justification for the scope, manner, and place under
which it was conducted, *see id.*, we agree with the district court that
the search was unreasonable and, therefore, unconstitutional.

### B.

We turn next to the question of whether Amaechi's right to be free
from this sexually invasive search was clearly established at the time
West performed the search. For purposes of analyzing whether this
Fourth Amendment violation was clearly established, we must go
beyond the general "unreasonableness" of the search and determine
"at a high level of particularity" the nature of the Fourth Amendment
violation. *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th
Cir. 1999); *see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stat-
ing that "the right allegedly violated must be defined at the acceptable
level of specificity"). In light of this requirement of a "high level of
particularity," we must analyze whether clearly established Fourth
Amendment jurisprudence protected Amaechi's right to be free from
the public exposure, touching, and penetration of her genitalia and
kneading of her buttocks during a search incident to arrest for a mis-
demeanor noise violation, and where no security risk or threat of the
concealment or destruction of evidence was present.

---

[12]To the extent that Amaechi's hands were secured behind her back,
with her shoulders bare and dress open from the waist down, weapons
easily could have been viewed without necessitating any pat down. The
outline of possible weapons could have been seen through the thin mate-
rial of the dress, and parts of Amaechi's body that were not already
exposed could have been searched by a pat down.

West conceded at oral argument that a strip search or a body cavity search conducted in public violates an arrestee's Fourth Amendment right to a reasonable search, but he argues that relevant precedent does not define his conduct as unlawful because no case holds that the "swiping" and "slight" penetration of an arrestee's genitalia pursuant to a search incident to an arrest violates the Fourth Amendment. Contrary to West's argument, the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (internal citation omitted)). Such precise precedent is not what the particularity principle mandates. Rather, the particularity principle mandates that courts refer to concrete applications of abstract concepts to determine whether the right is clearly established. *See Doe v. Broderick*, 225 F.3d 440, 458-59 (4th Cir. 2000) (Williams, J., concurring in part and dissenting in part) (citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). Thus, "'clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). The "contours of the right" must be drawn in such a way as to provide notice to a reasonable person in the official's position that his conduct violated the identified right. *See Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) ("Rather, the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional."). Accordingly, we must determine whether the contours of the right to be free from an unreasonable search have been identified in such a way as to afford West adequate notice that his search of Amaechi transgressed the Fourth Amendment. In doing so, we look to "cases of controlling authority in [this] jurisdiction," as well as the "consensus of cases of persuasive authority" from other jurisdictions. *Wilson*, 526 U.S. at 617.

For purposes of analyzing whether West was on notice that his search of Amaechi was unlawful, we agree with the district court that

precedent outlining limitations on the right to conduct strip searches are relevant. A strip search under federal law includes the exposure of a person's naked body for the purpose of a visual or physical examination. *See United States v. Dorlouis*, 107 F.3d 248, 256 (4th Cir. 1997) (treating the act of pulling down a suspect's trousers, while leaving his boxer shorts intact, as a strip search and equating "an unconstitutional strip search" with "an unnecessarily intrusive search"); *United States v. Vance*, 62 F.3d 1152, 1156 (9th Cir. 1995) (treating pulling down a suspect's trousers and underwear in public as a strip search); *United States v. Cardenas*, 9 F.3d 1139, 1145 (5th Cir. 1993) (noting that directing a suspect to undress amounts to a strip search). A body cavity search under federal law includes a visual or physical examination into the body's recesses. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979).

Amaechi's claim involves characteristics of both a strip search and a body cavity search. Although Amaechi was not per se "disrobed" by West, the officers in effect caused her substantial disrobing by refusing to allow her to change clothes after she informed them that handcuffing her would cause her naked body to be completely exposed from the waist down. Regardless of whether refusing to allow Amaechi to change was unreasonable,[13] the officers certainly knew or should have known that handcuffing Amaechi would result in publicly exposing a significant portion of her naked lower body. Yet, they nevertheless proceeded to secure Amaechi's hands behind her back. Then, with Amaechi in this vulnerable position, West, without any suspicion of danger to the officers or the possibility of the destruction of evidence, proceeded to go beyond "visual examination" and a pat down of the outside of Amaechi's housedress and instead physically touched and penetrated her genitalia and kneaded her buttocks with his bare hand. Public exposure of the genitalia accompanied by physical touching is far more intrusive than directing an arrestee to remove her clothing in private for the purpose of "visually

---

[13]In *United States v. Gwinn*, 219 F.3d 326 (4th Cir. 2000), we held that an officer is justified in retrieving suitable attire for the arrestee for his transport to the police station. *See id.* at 329; *see also United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977) (holding that officers have a duty to find clothing for an arrestee or permit an arrestee to do so).

inspecting" the arrestee's genitalia. *See United States v. Bond*, 120 S. Ct. 1462, 1464 (2000) ("Physically invasive inspection is simply more intrusive than purely visual inspection."). Physical penetration of the genitalia, no matter how slight, is an intrusion into the arrestee's body cavity and is the ultimate invasion of personal dignity. Accordingly, we have no difficulty concluding, as did the district court, that West's search, as described by Amaechi, is analogous to a strip search.[14]

Firmly rooted Supreme Court and Fourth Circuit precedent involving strip searches and body cavity searches should have made it apparent to West, as a reasonable officer, that his search of Amaechi was unlawful under the Fourth Amendment. It is not a new rule of law that searches involving the public exposure, touching, and penetration of an arrestee's genitalia are subject to limitations under the Fourth Amendment. Relevant precedent compels the conclusion that West's search transgressed these clear limitations.

The Supreme Court has expressly disavowed the right of an officer to disrobe an arrestee on the street pursuant to a search incident to an arrest without the presence of justifying factors. *See Illinois v. Lafayette*, 462 U.S. at 645 ("[T]he interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street."). The fact that, absent clear justification or exigent circumstances, an officer is not allowed to strip an arrestee on a public street pursuant to a search incident to an arrest necessarily means that an officer cannot go even further than simply disrobing the arrestee by actually touch-

---

[14]Additionally, we need not decide whether West's search was a strip search to apply precedent involving strip searches because those cases are not limited to strip searches per se. Rather, *Bell v. Wolfish*, 441 U.S. 520 (1974), and subsequent cases involving strip searches express a more general concern with the Fourth Amendment implications underlying the violation of personal privacy inherent in sexually invasive searches. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (refusing to require exact precedent as opposed to merely analogous precedent from which the unlawfulness of the officer's actions is made apparent). Because West's search involved the unwarranted public touching and penetration of Amaechi's genitalia, we believe that his search is guided by the principles found in *Bell* and subsequent cases governing sexually invasive searches.

ing and penetrating the arrestee's exposed genitalia on the public street.

This Court also has disavowed the type of public search conducted by West. We have applied the *Bell* analytical framework to set forth clear guidelines as to the manner in which a strip search must be conducted in order to comport with an arrestee's Fourth Amendment protection against unreasonable searches. *Bell*, 441 U.S. at 559. For instance, we have repeatedly emphasized the necessity of conducting a strip search in private. *See Dorlouis*, 107 F.3d at 256 (emphasizing that "[t]he search did not occur on the street subject to public viewing but took place in the privacy of the police van."); *Polk v. Montgomery Co., Md.*, 782 F.2d 1196, 1201-02 (4th Cir. 1986) ("[Whether the strip search was conducted in private] is especially relevant in determining whether a strip search is reasonable under the circumstances."); *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981) ("One of the critical, and certainly most obvious, elements in the *Bell v. Wolfish* balancing inquiry into the reasonableness of a strip search is 'the place in which it is conducted.'"). Despite these cases requiring the strip search to be conducted in private, West conducted his search of Amaechi on the street in front of the police cruiser, making it possible for the other police officers, Amaechi's neighbors, and her family to observe.

Moreover, this Court has recognized the fact, first established in *Bell*, that the intrusive, highly degrading nature of a strip search demands a reason for conducting such a search that counterbalances the invasion of personal rights that such a search involves. *Logan*, 660 F.2d at 1013. In *Logan*, we held the fact that the arrestee was charged only with an offense that was not commonly associated with the possession of weapons or contraband, without any indication that the arrestee possessed weapons or other contraband, weighed against the constitutionality of the strip search because "Logan's strip search bore no . . . discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified." *Id.* Similarly, because West had no reason to believe that Amaechi posed a danger to the officers, and because Amaechi was arrested for a misdemeanor noise violation, West should have known that his search of Amaechi similarly was unjustified and therefore unconstitutional.

Our agreement with the district court that West's search is clearly analogous to precedent involving strip searches is further supported by Virginia's definition of strip search.[15] Virginia's statutory law, which is similar to that of most states, provides that, "[s]trip search shall mean having an arrested person remove or arrange some or all of his clothing so as to permit *a visual inspection* of the genitals, buttocks, anus, female breasts, or undergarments of such person." Va. Code Ann. § 19.2-59.1(F) (Michie 1999) (emphasis added). Contrary to West's argument that his search of Amaechi does not meet the requisites of strip search as that phrase is defined by state statute, West's search actually was self-evidently more invasive than the type of search contemplated by the statute because he went beyond visual inspection into physical inspection.

Those statutory restrictions provided West with ample notice that his search of Amaechi was unreasonable. The statute requires an officer to conduct a strip search only in a private place. *See* Va. Code Ann. § 19.2-59.1(A). The provision further requires that strip searches, where permissible, be conducted "by persons of the same sex as the person arrested and on the premises where the search cannot be observed by persons not physically conducting the search." *Id.* Therefore, West's search of Amaechi violated every aspect of Virginia's own law governing the propriety of strip searches. Because the state statute is in accordance with federal law governing limitations on the manner and scope of strip searches, West had no reason to believe his search of Amaechi was reasonable or fell within a questionable area of law.[16]

---

[15]It is important to note that the technical language of the Virginia statute is not the controlling factor in determining whether this was in fact a strip search. Rather, that determination is informed by federal law. *See Davis v. Scherer*, 468 U.S. 183, 194-95 (1984) (holding that the only relevant inquiry is whether federal law rights are clearly established; it does not matter that the officer simultaneously violates state law rights that are clearly established). Nevertheless, because states define strip search in a uniform fashion, *see, e.g.*, Colo. Rev. Stat. Ann. § 16-3-405 (West 1998); Conn. Gen. Stat. Ann. § 54-33k (West 1994); Fla. Stat. Ann. § 901.211 (West 1996); Iowa Code Ann. § 702.23 (West 1993), we find state law persuasive on our interpretation of what constitutes a strip search.

[16]In support of our determination that a reasonable officer should have been on notice that his search violated the Fourth Amendment, we note

### III.

The entire body of jurisprudence applying limits on the type of sexually intrusive search conducted by West provides West with notice that his search of Amaechi was unconstitutionally unreasonable. There was absolutely no justification for this type of public search, in the form of a safety, security, or evidentiary concern; it was made incident to a two-day old arrest for a minor noise violation; and West's kneading of Amaechi's buttocks and his touching and penetration of Amaechi's exposed genitalia with his ungloved hand affronts the basic protections of the Fourth Amendment, which at its core is designed to protect privacy and personal dignity against unjustified invasion by the State, *see Schmerber v. California*, 384 U.S. 757, 767 (1966). Accordingly, on the facts shown by Amaechi, we conclude that Amaechi has alleged a deprivation of her constitutionally protected right to be free from an unreasonable search and that West is not entitled to qualified immunity. We, therefore, affirm the district court's denial of West's summary judgment motion based upon his asserted qualified immunity defense and remand for further proceedings.

*AFFIRMED AND REMANDED*

---

that the Sixth Circuit has held that a reasonable officer should be on notice that simply requiring an individual to sit naked while the officers search the arrestee's home is a violation of the Fourth Amendment, thereby depriving the officers of qualified immunity. *See Hall v. Shipley*, 932 F.2d 1147, 1153-54 (6th Cir. 1991). West's search went far beyond simply requiring Amaechi to stand naked while West conducted the search.