**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1925**

CHASITY HUTCHINSON,

Plaintiff - Appellee,

v.

DAVID L. LEMMON, Col., Superintendent of the West Virginia
State Police, In his official and individual capacities;
WEST VIRGINIA STATE POLICE; TRAVIS BERRY, Trooper, In his
official and individual capacities; R. D. STONESTREET, First
Sgt., in his official and individual capacities; C. J.
WHITE, First Sgt., in his official and individual
capacities; J. L. PHILIPS, Sgt., in his official and
individual capacities; M. L. PHILIPS, Sgt., in his official
and individual capacities; R. D. ARTHUR, Cpl., in his
official and individual capacities; T. A. BERRY, TFC., in
his official and individual capacities; M. L. OGLESBY,

Defendants – Appellants,

and

T. J. MIKELL, Sr. Tpr., in his official and individual
capacities; JOHN DOES, I - IV, in their official and
individual capacities,

Defendants.

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (3:07-cv-00424)

Argued:  May 12, 2011                    Decided:  June 30, 2011

Before WILKINSON, NIEMEYER, and KEENAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Michael Deering Mullins, STEPTOE & JOHNSON, LLP, Charleston, West Virginia, for Appellants.  Georgia Lee Gates, ACLU FOUNDATION OF WEST VIRGINIA, Glen Burnie, Maryland, for Appellee.  **ON BRIEF:** Robert L. Bailey, II, STEPTOE & JOHNSON, LLP, Charleston, West Virginia, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

In this interlocutory appeal, we consider the district court's summary judgment determination that certain officers of the West Virginia State Police (the State Police) were not entitled to qualified immunity. The conduct at issue involved the seizure and detention of the plaintiff, Chasity Hutchinson (Ms. Hutchinson), during a search of her residence executed pursuant to a valid search warrant. Ms. Hutchinson filed a complaint in the district court under 42 U.S.C. § 1983, alleging that the police officers executing the search warrant committed various federal and state constitutional violations and common-law torts. Among other allegations, Ms. Hutchinson asserts that the police officers ordered her out of the shower while she was nude and "dragged her" from the bathroom to the living room. There, Ms. Hutchinson alleges, she was required to lie naked on the floor, in the presence of her stepfather, brother, fiancé, and eight male officers, for an unnecessary and unreasonable period of time. Upon our review, we affirm the district court's denial of the defendants' summary judgment motion.[1]

---

[1] Our holding extends only to the portion of the district court's order at issue in this appeal, namely, the defendants' assertion of qualified immunity with respect to Ms. Hutchinson's unlawful seizure claim. We do not address the other issues adjudicated in the district court's order, including whether the defendants were entitled to judgment as a matter of law with respect to Ms. Hutchinson's other claims.

3

I.

A.

We review the facts in the light most favorable to Ms. Hutchinson, the nonmoving party in the district court. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986); <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003). The following facts are taken from the record, including the complaint and the deposition testimony of Ms. Hutchinson and her family members who were present during the incident.

In July 2005, the State Police obtained a valid warrant to search Ms. Hutchinson's residence located in Wayne County, West Virginia. On the night that the State Police executed the search warrant, three other individuals occupied the residence, including Josh Hutchinson (Josh), who is Ms. Hutchinson's brother, Michael Allen (Allen), who is Ms. Hutchinson's stepfather, and Edward Glenn (Glenn), who at the time was Ms. Hutchinson's fiancé. The State Police suspected that Josh and Allen were operating an illegal methamphetamine laboratory inside the residence.

The State Police assembled a Special Response Team (SRT), consisting of eight specially-trained state police officers, to execute the search warrant. According to Ms. Hutchinson, the SRT entered her residence around 11:00 p.m. Upon entering the

4

home, the police officers located Josh, Allen, and Glenn, and forcibly secured those individuals "face-down" on the main floor of the residence. After those individuals were secured, the officers continued their search of the residence.

During this initial search, two of the police officers found a locked bathroom door, which they "kicked open." Inside the bathroom, the two officers encountered Ms. Hutchinson, who was nude and stepping out of the shower. The officers drew their firearms and repeatedly screamed at her, "Get down, bitch, now." One of the officers searched the rest of the bathroom, while the other officer took custody of Ms. Hutchinson.

Upon leaving the shower, Ms. Hutchinson used one of her arms to cover her breasts and the other arm to cover her groin area. After she was forced to her knees, she reached behind her body in an attempt to retrieve a towel from a towel rack, but one of the officers grabbed her by her hair and pushed her down toward the ground. That officer then forcibly escorted Ms. Hutchinson, who was still nude, to the living room where she was required to lie "face-down" on the floor alongside Allen and Glenn.

Ms. Hutchinson alleged that the officers forced her to remain naked on the floor for a period lasting between 30 and 45 minutes. During this time, Ms. Hutchinson complained to the officers about being naked, and repeatedly requested but was

5

denied access to clothing to shield her body. In response to her requests for clothing, one or more of the officers told Ms. Hutchinson, "Shut up, bitch. Keep your head down and mouth shut." One officer responded to Ms. Hutchinson's pleas by stating, "What's the matter? Don't you think we've seen a bitch's ass before[?]"

According to Ms. Hutchinson, at one point during the encounter, an officer touched Ms. Hutchinson on her naked buttocks while stating, "Calm down, sweetie." That officer then stated, with a chuckle or a smirk, "Oh, I guess I shouldn't have touched you there, huh."

Around the time that emergency medical personnel arrived at the residence, Ms. Hutchinson was provided a blanket to cover herself. She eventually was given clothing and allowed to dress herself in front of a police officer. Although Ms. Hutchinson allegedly was detained while unclothed for a period between 30 and 45 minutes, one of the officers executing the search warrant testified during his deposition that police officers ordinarily need only between four and five minutes to "clear" a home the size of Ms. Hutchinson's residence.

The defendants disputed Ms. Hutchinson's version of these events contending, among other things, that her body was covered within two to five minutes after the police officers' entry. Nevertheless, for purposes of this interlocutory appeal, we must

accept Ms. Hutchinson's version of the manner in which she was treated by the police officers during the incident, including her allegation that she was detained without clothing for at least 30 minutes. See Kittoe, 337 F.3d at 397.

B.

After the events described above, Ms. Hutchinson initiated this action, naming as defendants the eight police officers (the individual officers) who participated in the execution of the search warrant, as well as the State Police and its superintendent Colonel David L. Lemmon (collectively, the defendants). Ms. Hutchinson included six counts in her complaint: (1) assault and battery; (2) illegal seizure in violation of the United States and West Virginia Constitutions; (3) excessive force depriving her "of her right to freedom from physical abuse, coercion, and intimidation"; (4) unreasonable invasion of her right to privacy; (5) the "tort of outrage"; and (6) failure to adequately train employees.[2]

Following discovery, the defendants filed a motion for summary judgment seeking dismissal of all Ms. Hutchinson's claims. In that motion, the defendants argued that each of Ms. Hutchinson's claims failed as a matter of law and that,

---

[2] The first five counts were asserted against all defendants, while the sixth count was asserted against only Colonel Lemmon and the State Police.

7

additionally, the individual officers were entitled to qualified immunity.

The district court granted in part, and denied in part, the defendants' summary judgment motion. Hutchinson v. W. Va. State Police, 731 F. Supp. 2d 521, 551 (S.D. W. Va. 2010). As pertinent to this appeal, the district court denied the defendants' motion based on qualified immunity with regard to the unlawful seizure claim. The district court reached its decision by applying the two-step inquiry articulated in Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808 (2009). The district court first determined that, when the facts were viewed in the light most favorable to Ms. Hutchinson, the detention violated her Fourth Amendment rights. Next, characterizing the issue as Ms. Hutchinson's "right to be free from an unjustified 30- to 45-minute naked detention," the district court held that this right was clearly established in July 2005 when the seizure took place. Accordingly, the district court held that the defendants were not entitled to qualified immunity on the unlawful seizure claim. 731 F. Supp. 2d at 542-44.

II.

The defendants appeal from the district court's holding that they were not entitled to qualified immunity. Under 28 U.S.C. § 1291, we have jurisdiction over all final district court orders. In cases such as the present one, in which a district court rejects a defense of qualified immunity at the summary judgment stage based on an issue of law, the district court's holding is a final decision within the meaning of § 1291 and is subject to immediate appeal. Winfield v. Bass, 106 F.3d 525, 528 (4th Cir. 1997) (en banc).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects an officer from liability or, in many instances, from having to stand trial when the officer makes a decision that even if constitutionally deficient, "reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The doctrine ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008)

9

(quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense. Kittoe, 337 F.3d at 397.

In evaluating a defense based on the doctrine of qualified immunity at the summary judgment stage, we conduct the Saucier v. Katz inquiry in which we determine (1) whether, construing the facts in the light most favorable to the nonmoving party, the government official's actions violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. 533 U.S. at 201; see also Pearson, 129 S. Ct. at 815-16; Kittoe, 337 F.3d at 397. For purposes of the present appeal, the defendants do not contest the district court's conclusion that the circumstances of Ms. Hutchinson's seizure and detention, when viewed in the light most favorable to her, constituted a violation of her Fourth Amendment rights.

Instead, the defendants' sole argument pertains to the second prong of the Saucier test. The defendants argue that Ms. Hutchinson's right to be free from an unjustified, extended detention without clothing was not "clearly established" at the time she was seized in the manner described above. We therefore proceed directly to the second step of the Saucier analysis, and consider whether the constitutional right in question was

10

"clearly established" on July 8, 2005, the date of the incident. See Kittoe, 337 F.3d at 397.

This issue presents a pure question of law that we review de novo.  Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The defendants were entitled to qualified immunity if "a reasonable officer could have believed [the individual officers' actions] to be lawful, in light of clearly established law and the information the . . . officers possessed."  See id. at 641.  In making this determination, we consider decisions from the United States Supreme Court, this Court, and the highest court of the state in which the incident took place.[3]  Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

---

[3] Our analysis in this case focuses on decisions from the United States Supreme Court and this Court.  We are not aware of any cases from the Supreme Court of Appeals of West Virginia that bear on the issue whether the individual officers violated Ms. Hutchinson's "clearly-established" constitutional rights. We further note that although the cases cited in this opinion discuss the federal right to be free from illegal seizures under the Fourth Amendment to the United States Constitution, the Supreme Court of Appeals of West Virginia interprets the analogous provision in the Constitution of West Virginia in harmony with federal case law construing the Fourth Amendment. See State v. Jones, 456 S.E.2d 459, 463 n.6 (W.Va. 1995).

11

We repeatedly have held that there is no requirement that the precise right allegedly violated already have been recognized specifically by a court before such right may be held "clearly established" for qualified immunity purposes. See Buonocore v. Harris, 65 F.3d 347, 356-57 (4th Cir. 1995); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992); see also Hope v. Pelzer, 536 U.S. 730, 739 (2002) (rejecting proposition that qualified immunity is inapplicable only if the very action in question has previously been held unlawful); Robles v. Prince George's County, 302 F.3d 262, 270 (4th Cir. 2002) (same); Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (same). Thus, the absence of a court decision holding identical conduct to be unlawful does not prevent a court from denying a qualified immunity defense. Edwards, 178 F.3d at 251; Kittoe, 337 F.3d at 403. Accordingly, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

The defendants argue that at the time the individual officers seized Ms. Hutchinson and detained her in the described manner, neither this Court nor the Supreme Court had decided that such conduct was unlawful. The defendants assert that the district court erred in relying on court decisions that were issued after the present incident took place, as well as decisions from courts in other jurisdictions.

12

The defendants object particularly to the district court's reliance on the Supreme Court's holding in <u>Los Angeles County, California v. Rettele</u>, 550 U.S. 609 (2007) (per curiam), a case involving similar facts that was decided almost two years after the present incident occurred. In <u>Rettele</u>, certain police officers searching a house pursuant to a valid search warrant ordered two occupants of the residence out of bed. <u>Id.</u> at 611. The two individuals were required to stand naked at their bedside for about two minutes while the officers secured the premises. <u>Id.</u> at 611, 615. In holding that the police officers did not violate the plaintiffs' Fourth Amendment rights, the Supreme Court observed that the officers were not:

> free to force [the occupants] to remain motionless and standing for any longer than necessary. We have recognized that 'special circumstances, or possibly a prolonged detention' might render a search unreasonable. There is no accusation that the detention here was prolonged. . . . <u>And there is no allegation that the deputies prevented [the two occupants] from dressing longer than necessary to protect their safety.</u>[4]

<u>Id.</u> at 615 (emphasis added) (internal citations omitted).

The defendants correctly assert that the Supreme Court's holding in <u>Rettele</u> stands for the proposition that it is

---

[4] In reversing the Ninth Circuit's holding denying the police officers qualified immunity, the Supreme Court held that the seizure was reasonable because the officers' conduct was permissible to protect their safety, and the detention was not prolonged in light of the circumstances. 550 U.S. at 614-15.

13

unreasonable and, therefore, is unconstitutional, for police officers executing a search warrant to detain a person unclothed longer than is necessary to secure a home and minimize the risk of harm to the officers. The defendants contend, however, that before the Rettele decision, when the events at issue in this case occurred, a reasonable police officer would not have been on notice that it was unlawful to detain an individual naked for a period between 30 and 45 minutes, in front of other police officers and members of that individual's family, after the premises had been secured. We disagree with the defendants' argument.

Here, the unlawfulness of the individual officers' conduct was obvious, even before the Supreme Court's decision in Rettele. Accepting Ms. Hutchinson's version of the events, she was kept naked for a period substantially longer than necessary to secure the home and protect the officers' safety. There was no valid justification for the prolonged detention of Ms. Hutchinson while naked, especially given the police testimony that a home of that size ordinarily could be secured within four or five minutes. In engaging in this manifestly unlawful behavior, the individual officers could not have "reasonably misapprehend[ed] the law," cf. Brosseau, 543 U.S. at 198, nor can it be said that they made a "bad guess[] in [a] gray area[]," cf. Iko, 535 F.3d at 238.

14

Our conclusion is supported further by two cases, each of which was decided before the individual officers' prolonged detention of Ms. Hutchinson. These cases would have put a reasonable officer on notice that the individual officers' alleged treatment of Ms. Hutchinson violated a clearly-established constitutional right.

In the first of these cases, Michigan v. Summers, 452 U.S. 692 (1981), the Supreme Court held that police officers executing a valid search warrant have "limited authority to detain the occupants of the premises while a proper search is conducted."[5] Id. at 705. The Court cautioned, however, that this "limited authority" is applicable to the "routine detention" of residents of a house, and that "special circumstances, or possibly a prolonged detention," could render such a detention unlawful. Id. at 705 n.21. Thus, the Summers decision stands for the proposition that, in searching a residence pursuant to a valid search warrant, a "routine" detention of individuals found in the residence is permissible,

---

[5] The Court's decision in Summers established a balancing test to analyze the reasonableness of a detention, which weighs the intrusiveness of the search and seizure against law enforcement's interest in (1) preventing flight, (2) minimizing the risk of harm to others, and (3) facilitating the orderly completion of a search against the character of the particular intrusion caused by a warrant-based seizure. 452 U.S. at 702-03.

while a non-routine or unreasonable detention may be impermissible. As discussed above, the individual officers' treatment of Ms. Hutchinson fell far short of being reasonable, and certainly was not "routine."

Secondly, our decision in Amaechi v. West, 237 F.3d 356 (4th Cir. 2001), also supports our conclusion that a reasonable officer should have known that the individual officers' treatment of Ms. Hutchinson was unlawful. In that case, Amaechi was the subject of an arrest warrant for violating a misdemeanor noise ordinance. Id. at 359. When the police officers knocked on Amaechi's door to execute the arrest warrant, Amaechi answered the door wearing a "housedress" that was missing several buttons, requiring her to gather her dress with one of her hands to keep the dress closed. Id. at 359 n.7. Amaechi was not wearing any undergarments beneath her dress. Id. at 359.

The officers told Amaechi that they intended to place her in handcuffs, at which point Amaechi informed the officers of her clothing situation and asked to get dressed before being taken into custody. Id. The officers denied Amaechi's request and secured Amaechi's hands behind her back, causing her dress to fall open below her chest. Id. After Amaechi again informed the officers that she was not wearing any underwear, the officers performed a search of Amaechi's person, in front of her

16

house and in plain view of her family and neighbors, during which Amaechi's genitals were penetrated slightly. Id. at 359-60.

Amaechi filed a complaint against the Town and the officers under 42 U.S.C. § 1983, and, in response, one of the officers filed a motion for summary judgment raising the affirmative defense of qualified immunity. Id. at 360. The district court denied the officer's motion. Id. In affirming the district court's holding, we held that the search of Amaechi, which was akin to a "strip search," was "highly intrusive without any apparent justification" and, therefore, was unconstitutional. Id. at 361-63, 365. We explained that the officer was not entitled to qualified immunity because he "had no reason to believe his search of Amaechi was reasonable or fell within a questionable area of law." Id. at 365.

Importantly, in reaching our conclusion in Amaechi, we observed that "the officers certainly knew or should have known that handcuffing Amaechi would result in publicly exposing a significant portion of her naked lower body." Id. at 363. We further observed that the search at issue "affront[ed] the basic protections of the Fourth Amendment, which at its core is designed to protect privacy and personal dignity against unjustified invasion by the State." Id. at 366 (citation omitted). In our view, the Amaechi decision provided the

17

individual officers with notice that their "unjustified invasion" of Ms. Hutchinson's privacy and personal dignity was an "affront" to the basic protections of the Fourth Amendment. For these reasons, we agree with the district court's conclusion that the individual officers were not entitled to summary judgment on the grounds of qualified immunity with respect to Ms. Hutchinson's unlawful seizure claim.

III.

Finally, we address the defendants' argument that they were entitled to qualified immunity with respect to Ms. Hutchinson's common-law tort claims, an issue that the district court did not address. Qualified immunity is an affirmative defense, which a defendant bears the burden to plead adequately. Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 305 (4th Cir. 2006). A defense based on qualified immunity may be waived if not "squarely presented" to the district court. Sales v. Grant, 224 F.3d 293, 296 (4th Cir. 2000). We may refuse to consider a qualified immunity defense on appeal if the defense was not preserved below. Ridpath, 447 F.3d at 305.

In the memorandum accompanying their motion for summary judgment, the defendants asserted a qualified immunity defense with respect to the unlawful seizure claim. Although that memorandum included a footnote stating "[b]oth the individual

18

and official-capacity defendants are entitled to state-law qualified immunity," the defendants did not discuss the common-law tort claims asserted in the complaint. We therefore decline to address the qualified immunity defense in relation to any claims other than the unlawful seizure claim, because the defense was not "squarely presented" to the district court. See Ridpath, 447 F.3d at 305; Sales, 224 F.3d at 296.

IV.

For these reasons, we affirm the district court's judgment.

AFFIRMED

19