**UNITED STATES of America,**

v.

**Arrion Tremayne FORD, Defendant.**

**No. CR.A. 02–433–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 13, 2002.

Hallie Mitchell, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Geremy C. Kamens, Esquire, Office of the Public Defender, Alexandria, VA, for Defendant.

### *MEMORANDUM OPINION*

LEE, District Judge.

THIS MATTER is before the Court on Defendant Arrion Tremayne Ford's motion to ·suppress evidence resulting from a search subsequent to a traffic stop on August 7, 2002. The Court held an evidentiary hearing on October 4, 2002, and the Court issued an Order on October 10, 2002, staying further proceedings in this matter until the Court issued its decision on the motion. The question presented here is whether the bounds of the Fourth Amendment include a body cavity search, incident to a lawful arrest, after a traffic stop on the side of a public, highly-traveled highway, in plain daylight where the law enforcement officer exposes the arrestee's buttocks to public viewing. The Court holds that this search was not within the bounds of the Fourth Amendment. Upon consideration of the motions, the authorities of counsel, and an opportunity to observe the demeanor of the witnesses and consider their testimony, the Court ren-

ders the following findings of fact and conclusions of law with respect to the motion to suppress.

## I. BACKGROUND

On August 7, 2002, Officer Gregory Monahan, of the United States Park Police, stopped Mr. Arrion T. Ford at approximately 7:23 p.m. on the George Washington Memorial Parkway (the "Parkway"). Officer Monahan observed Mr. Ford's vehicle traveling on the Parkway and decided to stop the vehicle on the suspicion that the vehicle had a cracked windshield.

As the vehicle came to a stop, Officer Monahan testified that he observed the defendant's shoulder moving in a stuffing motion. Once stopped, Officer Monahan approached the vehicle and observed that the defendant was motioning to his right, as if concealing something. Officer Monahan asked Mr. Ford for his license and registration, and Mr. Ford produced the documents. At this point, Officer Monahan observed that the defendant was nervous as his hands were shaking and he had an accelerated heart rate. Officer Monahan detected what he believed was the odor of burnt marijuana. He asked the defendant if he had been smoking marijuana. Officer Monahan testified that the defendant told him that he had been smoking marijuana earlier that day but that he did not have marijuana on his person or in the vehicle. Mr. Ford denied telling the officer he was smoking marijuana at all. Mr. Ford testified that he told the officer that he had been smoking a cigar. Mr. Ford also testified that he had a cellular telephone on the passenger seat of his vehicle. Officer Monahan called for back-up to have a second officer respond to the scene.

Officer Monahan ordered the defendant to step out of the car and directed him to the rear of the car. Officer Monahan ob-served that the defendant was clinching his buttocks as he was walking to the rear of the car. He took the defendant to the rear of the car and placed him with his face against the car and his hands behind his back. Officer Monahan searched the defendant's outer clothing: starting with his arms, going down his shoulders to his back, and then to his hip and buttock area. As Officer Monahan came near the buttock area, the defendant appeared to be clinching his buttocks. Officer Monahan reached between the defendant's buttocks and felt a hard object. Officer Monahan testified that the hard object he felt was crack cocaine. At this stage, Officer Monahan handcuffed the defendant and asked him to squat, i.e., to bend down and stand back up, but the defendant refused. Officer Monahan testified that he decided to retrieve the item; he put on latex gloves and manipulated the item to the top of the waistband of the defendant's pants. He pulled back the waist bands of the defendant's pants and boxer briefs, reached in between Mr. Ford's buttocks, and retrieved a blue Ziploc bag containing 1 gram of crack cocaine. The item was the size of a thumbnail. Officer Monahan testified that he did not expose the defendant's buttocks or genitalia.

In his testimony, Mr. Ford tells a different story of his arrest. He testified that Officer Monahan placed him in handcuffs as soon as he exited the vehicle. He stated that Officer Monahan searched him at the rear of his vehicle. Mr. Ford said he was wearing shorts and that Officer Monahan pulled his shorts and his boxer briefs away from his body and shook both garments around—as if trying to shake something loose. He testified that Officer Monahan looked down, inside his boxer briefs. Mr. Ford also testified that Officer Monahan directed him to squat and cough but that he refused. Mr. Ford continued and explained that, when the back-up officer

arrived, Officer Monahan went to his patrol car, put on latex gloves, approached him, and told him that he (Officer Monahan) knew that Mr. Ford was hiding something because he refused to squat and cough. On direct examination by Mr. Geremy Kamens, Mr. Ford explained:

> MR. FORD: He (Officer Monahan) told me he knew that I was hiding something because I didn't want to squat and cough. So then he took my shorts and he took my boxers and he pulled them down (sic)
>
> MR. KAMENS: How far did he pull them down?
>
> A. . . . . [B]elow my butt, . . . .
>
> Q. So he removed your clothes below your buttocks?
>
> A. Yes.
>
> Q. Okay. What did he do after he removed your clothes, your pants, and your boxer shorts below your buttocks?
>
> A. He proceeding (sic) to go in my rectum, but that's when I was struggling with him.
>
> Q. How did he go into your rectum?
>
> A. With the glove.
>
> Q. What did he do with the glove on his hand? What did he do with his hand?
>
> . . . .
>
> A. He took the glove—by that time, it was (sic) like two officers at the scene. They had finally held me and at that point, he spread my butt cheek, and then he went . . . into my rectum and retrieved the item, the contraband that he said that I had in my buttocks.

(Tr. at 87–88.)

## II. DISCUSSION

### A. Standard of Review

The Fourth Amendment guarantees "the [r]ight of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This guarantee is "subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). One of those exceptions is where the search of a person is conducted incident to that person's arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In a search incident to a lawful arrest, the officer may search for weapons and evidence so long as the arrest itself was valid. *Id.* at 235, 94 S.Ct. 467. Not only must the search be pursuant to a warrant or one of the warrantless exceptions, the search must not be unreasonable. *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).

### B. Analysis

The Court notes, at this time, that the Government explicitly did not rely upon the principles in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) for its warrantless search of Mr. Ford. Officer Monahan testified that he "searched" the defendant, not that he conducted a "pat-down" in accordance with the principles in *Terry*. The officer's consistent use of the word "search" and not "pat-down" evidences the officer's knowledge of the technical differences between these two terms of art: he was conducting a search incident to arrest and not a pat-down under *Terry*. The Court will analyze the matter from the perspective of a search incident to a lawful arrest and then consider the parameters of *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

#### 1. The Arrest Was Lawful

■ The Court's first inquiry, then, is to determine whether the search was conducted incident to a lawful arrest: the primary requisite is that the arrest was valid. Officer Monahan offered testimony of the circumstances leading to Mr. Ford's

arrest: (1) Mr. Ford's stuffing motions when the officer was driving behind Mr. Ford's vehicle and as the officer approached the vehicle; (2) Mr. Ford's nervous behavior, specifically his rapid heart rate, shaky hands, and increased breathing; (3) the odor of burnt marijuana when the officer approached Mr. Ford's vehicle; (4) Mr. Ford allegedly telling the officer that he had smoked marijuana earlier that day. Although all of these circumstances can be rebutted by Mr. Ford's testimony and one's general apprehension to being pulled over on a traffic stop, the Court acknowledges that Officer Monahan, in the totality of the circumstances, had probable cause to arrest Mr. Ford. Nonetheless, the Court is troubled by Officer Monahan's long delay in response to the Court's question about the nature of Mr. Ford's arrest:

> THE COURT: At the point at which you put the handcuffs on, he (Mr. Ford) was under arrest for what charge?
>
> THE WITNESS: Well, at that point, I mean, I'm—(long pause)—I'm searching him because I smell marijuana.
>
> THE COURT: My question was at the point on which you placed the handcuffs on him, what was the charge?
>
> THE WITNESS: I guess it would be fair to say marijuana and crack cocaine at that point.

(Tr. at 61.) The Court is also troubled by Officer Monahan's statement that the defendant was under arrest for possession of marijuana when he did not observe any marijuana at the time of the traffic stop before handcuffing Mr. Ford. Furthermore, Officer Monahan, in more than thirty minutes of testimony, did not mention the allegedly legitimate reason for the traffic stop: the cracked windshield. The Court is mindful, however, that the threshold for probable cause is very low, and Officer Monahan had probable cause to arrest Mr. Ford for, at least, driving under the influence of a narcotic.

### 2. The Search Was Unreasonable under the Fourth Amendment

■ Having found that the arrest was supported by probable cause, the Court next determines whether the search was reasonable under the Fourth Amendment. After making a valid custodial arrest, the police may conduct a warrantless search of the arrestee without having probable cause or reasonable suspicion to believe that the arrestee possesses weapons or evidence. The officer may make a full custodial search in order to support his general need to disarm a suspect or preserve evidence that may be in the individual's possession. The search must be reasonable given the circumstances. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). But, a law enforcement officer's authority to conduct a full body cavity search incident to arrest, without a warrant is only "skin deep." *See Commonwealth v. Gilmore*, 27 Va.App. 320, 498 S.E.2d 464, 468 (1998).

■ The Supreme Court has stated that the considerations that justify the authority to search incident to a lawful arrest "have little applicability with respect to searches involving intrusions beyond the body's surface." *Schmerber v. California*, 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Fourth Circuit has further explained that the officer's authority to effectuate a full search of the person, when conducting a search incident to arrest, does not include the right to "swipe the arrestee's outer genitalia and slightly penetrate the genitalia." *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir.2001). In *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court established the analytical framework for determining the reasonableness of a sexually intrusive search: the court must analyze "the scope of the particular intrusion, the manner in which it is

conducted, the justification for initiating it, and the place in which it is conducted."

Analyzing Officer Monahan's search of Mr. Ford, the Court concludes that the search was unreasonable and exceeded all bounds of decency. As a threshold matter, the Court received conflicting testimony as to the extent of the search. Having had the opportunity to observe the witnesses, the Court makes several findings concerning the credibility of the witnesses. Initially, Officer Monahan testified that he observed Mr. Ford's elevated breathing at the time he was questioning him in connection with the traffic stop. This statement, however, was not contained in the officer's police report nor was it contained in the criminal complaint. Officer Monahan said the reason for the traffic stop was allegedly a cracked windshield, yet, neither Officer Monahan nor the Government mentioned the so-called cracked windshield again in more than thirty minutes of testimony. Officer Monahan appeared caught off-guard by, and there was a long delay in his answer to, the Court's question as to the charge that the defendant was being arrested for being on the side of the road. The Court noticed that when questioned as to the charge, Officer Monahan's demeanor changed, his face flushed, and he took at least a minute—a long pause—before answering the Court's question. In fact, he attempted to answer another question and not the question asked. Ultimately, he said he placed Mr. Ford under arrest for the possession of marijuana and later possession of cocaine. Officer Monahan had not observed any marijuana nor was any marijuana found. Regarding the search, Officer Monahan testified that, once he felt the item between Mr. Ford's buttocks, he coached the item, from outside of Mr. Ford's shorts, to the top of the shorts, pulled the shorts back, and reached in to grab the item. In contrast, Mr. Ford testified to a much more graphic scene.

The Court finds Mr. Ford's testimony compelling; and that based on his testimony, his demeanor in court, and the Court's observation of him, the Court finds that Officer Monahan's statements regarding the search lack credibility. Officer Monahan testified that he felt an item the size of a thumbnail through the defendant's outer clothing, that he immediately knew that it was crack cocaine, and that he coached such item through the outer clothing to the top of the defendant's shorts. The Court finds this scenario highly improbable because Officer Monahan put on latex gloves before reaching into the defendant's shorts. Why did Officer Monahan need latex gloves to grab the item through Mr. Ford's shorts? The Court finds that Officer Monahan was going to search for the item between Mr. Ford's buttocks—not through the clothing—but actually pulling apart the defendant's buttocks and reaching in to grab the item he had felt. Furthermore, the Court finds that Officer Monahan determined that the item was contraband only after squeezing, sliding, and manipulating the item in Mr. Ford's buttocks. The Court concludes that Officer Monahan's testimony was inconsistent with his actions at the time and that Mr. Ford's testimony concerning the actual search was more credible. There was additional testimony of Ms. Shanita Rich, the defendant's fiancee, concerning her overhearing a conversation between the defendant and a person whom she believed was Officer Monahan. Ms. Rich testified that the defendant called her on his cellular telephone contemporaneously with the traffic stop and that she overheard the officer and Mr. Ford speaking during part of the traffic stop. The Court, however, does not have to reach Ms. Rich's testimony in connection with this motion.

The Court makes the following additional factual findings in order to proceed with its analysis under *Bell.* The Court finds

that Officer Monahan decided to conduct a full-blown body cavity search for contraband based on the statement that the defendant had been smoking marijuana earlier that day. The Court finds that, after placing Mr. Ford in handcuffs, Officer Monahan pulled back Mr. Ford's shorts and boxer briefs away from his body and shook both garments around—as if trying to shake something loose. Officer Monahan looked down inside of Mr. Ford's boxer briefs. Then, upon feeling an item that was probably contraband, Officer Monahan ordered Mr. Ford to squat and cough; Mr. Ford refused this request. When the back-up officer arrived, Officer Monahan went to his patrol car and put on latex gloves. He approached Mr. Ford and pulled down Mr. Ford's shorts and boxer briefs, revealing his naked body to below his buttocks. Officer Monahan, with his latex-gloved hand, reached in between Mr. Ford's buttocks. Mr. Ford struggled against Officer Monahan's intrusion, and another officer held him down. Officer Monahan spread Mr. Ford's buttocks apart and retrieved the contraband. The Court finds that this scene occurred in broad daylight[1] on the side of the George Washington Parkway, a heavily traveled roadway, at approximately 7:23 p.m., at the tail end of rush hour.

Taking the *Bell* factors into account, the Court concludes that Officer Monahan engaged in a highly invasive search by exposing the defendant's buttocks on the side of a public highway in broad daylight, that the search violated the defendant's Fourth Amendment protection, and that the evidence therewith obtained is suppressed. The scope of the intrusion was that Officer Monahan, in order to determine the nature of the object he felt on his initial outer search, retrieved the item by exposing the defendant's buttocks to the motorists on the George Washington Parkway. Officer Monahan put on latex gloves, pulled down the defendant's shorts and undergarments below his buttocks, and reached in between the defendant's buttocks to pull the item.

Neither Officer Monahan nor the Government offered any evidence or testimony that the search of the defendant's buttocks, in broad daylight on the side of the Parkway, was justified. No testimony was proffered that the defendant was attempting to destroy the evidence, or that he possessed a weapon or some means to subvert the legal process. The only evidence before the Court is that Mr. Ford was clinching his buttocks; however, the Court fails to see how, by clinching his buttocks, the defendant was going to destroy the evidence. The body cavity search could have waited until Mr. Ford was taken to an appropriate location for such searches. The Court also concludes that the character of the item Officer Monahan felt was the size of a thumbnail. When he initially searched Mr. Ford through his outer clothing, the item was not immediately apparent as crack cocaine. Officer Monahan was so excited that he felt compelled to display Mr. Ford's buttocks, to spread his buttocks apart, and to reach in between his buttocks to retrieve the item. The Court finds no justification for such an invasive search under the circumstances.

Finally, the scene took place on the side of the George Washington Parkway at approximately 7:23 p.m.. This time is considered the tail-end of rush hour when many motorists travel this road on their way out of the city. This scene took place in August at 7:23 p.m.; the Court takes judicial notice that, during the summer months, it would still be bright daylight

---

1. The Court takes judicial notice that, during the summer months, the period of daylight lasts until about 8:30 p.m.; and that the event occurred in broad daylight.

during that time of the evening. These circumstances further support the Court's conclusion that the search exceeded the bounds of decency and the limits of the defendant's Fourth Amendment protection against unreasonable searches and seizures.

Both strip and body cavity searches "entailing the inspection of the anal and/or genital areas have been accurately described as demeaning, dehumanizing, undignified, humiliating, embarrassing, repulsive, degrading, and extremely intrusive of one's personal privacy." *Amaechi v. West*, 87 F.Supp.2d 556, 565 (E.D.Va.2000). The Fourth Circuit, in *United States v. Dorlouis*, 107 F.3d 248, 256 (4th Cir.1997), explained that the strip search in that case was not unreasonable within the bounds of the Fourth Amendment because the search *"did not occur on the street subject to public viewing* but took place in the *privacy of the police van.*" (Emphasis added). In stark contrast, Officer Monahan searched Mr. Ford's buttocks by exposing his buttocks to public viewing; this search was unreasonable and unconstitutional.

### III. CONCLUSION

The Court finds that Officer Monahan exceeded the outer limits of the defendant's Fourth Amendment protection when he shoved his gloved hand into the defendant's buttocks. Officer Monahan conducted an intrusive body cavity search, on the side of the George Washington Parkway, in broad daylight, following a traffic stop for a cracked windshield. The Court finds that the *Bell* factors, established by the Supreme Court, weigh in favor of a conclusion that Officer Monahan's actions were unreasonable within the Fourth Amendment. The Court holds that all physical evidence seized from Mr. Ford at that time. resulted from an unlawful search and is suppressed.

From the foregoing, it is hereby

ORDERED that Defendant Arrion T. Ford's Motion to Suppress any and all evidence resulting from the search of Mr. Ford, on the side of the road, following a traffic stop by Officer Monahan on August 7, 2002 is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.