*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1531**

State of Minnesota,
Respondent,

vs.

Larry Dusaun Gray,
Appellant.

**Filed July 6, 2015
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-13-1152

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of third-degree controlled substance crime, arguing that the district court erred by denying his motion to suppress cocaine that was discovered during a pat-frisk and subsequently seized during a search incident to arrest. Because the pat-frisk was reasonable at its inception and in its scope, and because the search incident to arrest was valid and reasonably executed, we affirm.

## FACTS

On August 16, 2012, Sergeant James LaBarre and Officer Cort Baumgart were on patrol in St. Paul in an unmarked vehicle. Sergeant LaBarre and Officer Baumgart have extensive experience investigating street-level drug sales. Sergeant LaBarre has participated in over 100 drug buys. As a result of his training and experience, Sergeant LaBarre knows about the drug trade, how drug deals are arranged, where dealers meet to sell drugs, and where drugs are hidden to avoid detection.

A confidential reliable informant (CRI) had told Officer Baumgart that a man named "Larry" would be driving a silver Dodge Charger with out-of-state license plates and selling "a large amount of cocaine" in St. Paul that day. At approximately 6:00 p.m., Sergeant LaBarre and Officer Baumgart saw a silver Dodge Charger with Ohio license plates near Fuller Avenue between Chatsworth and Victoria streets. They stopped the vehicle. Appellant Larry Gray was the driver, and Lewis Sanders was the passenger. The officers smelled marijuana coming from the vehicle. Gray denied having drugs in the vehicle and invited the officers to search the vehicle. During the search, the officers

found a digital scale and sandwich bags, which, based on the officers' experiences, were consistent with drug use and sales. Because neither Gray nor Sanders had a valid driver's license, the officers instructed them to leave the vehicle parked and to find another driver.

Approximately 20 minutes later, Sergeant LaBarre and Officer Baumgart were patrolling the Midway Shopping Center area near the intersection of University and Snelling avenues. The officers commonly patrolled that area because buyers and sellers of narcotics frequently met there for exchanges. They saw the silver Dodge Charger parked in a parking lot. Several people were inside the vehicle. Sanders was in the driver's seat. After several minutes, the group of people got out of the vehicle and walked toward a nearby grocery store. The officers lost sight of them. Approximately 15 minutes later, a white SUV approached the Charger. Sanders exited the SUV, entered the Charger, and drove out of the parking lot.

Sergeant LaBarre and Officer Baumgart stopped the Charger because Sanders did not have a valid driver's license. Sanders pulled over in a gas station on Snelling Avenue, south of Interstate 94. During the stop, the white SUV pulled into the gas station. Gray was inside the SUV. Sergeant LaBarre told Gray that if he saw Gray or Sanders driving the Charger again, the vehicle would be towed.

Approximately two hours after their initial encounter with Gray and Sanders, Sergeant LaBarre and Officer Baumgart stopped in the parking lot of a gas station near the intersection of Snelling and Minnehaha avenues. They saw the silver Dodge Charger parked alongside a gas pump. Gray was standing outside the vehicle with another person. Gray was holding his hand out, with his palm facing up. Both men were looking down at

3

Gray's hand. Gray appeared to recognize the officers, mouthed something to the other person, and moved his left hand to his left hip or backside.

Officer Baumgart believed that they had interrupted a drug deal. Sergeant LaBarre approached Gray and ordered him to place his hands on his head for a pat-frisk. Gray complied. The officers radioed for backup because they were concerned for their safety. Sergeant LaBarre pat frisked the area where Gray had moved his left hand. He felt what he described as a hard, pointy object that he immediately thought was a hard piece of crack cocaine. The object was protruding from Gray's buttocks. At that point, Sergeant LaBarre placed handcuffs on Gray and turned him over to Officer Baumgart.

Officer Baumgart believed that even though Gray was handcuffed, he may have been able to reach the object that was protruding from his buttocks. Officer Baumgart put on a latex glove and reached into Gray's pants to remove the object, which he described as a "pointed, hard object" packaged in a "clear plastic baggie." Officer Baumgart did not have to pull down or remove Gray's pants because they sat low on Gray's waist and were baggie enough to allow access. Gray attempted to make the removal more difficult by tensing up, but Officer Baumgart successfully removed the object. Gray immediately stated, "That's not mine." The object was later tested and determined to be cocaine.

Respondent State of Minnesota charged Gray with third-degree possession of a controlled substance. Gray moved to suppress the cocaine, arguing that he was "illegally seized and subjected to a pat-down search" and that the officers violated his Fourth Amendment rights when they conducted a "field strip search." The district court denied

4

Gray's motion. Gray resolved his case in a *Lothenbach* proceeding, preserving the suppression issues for appeal.[1] The district court found Gray guilty of third-degree possession and sentenced him to serve 45 months in prison. This appeal follows.

**D E C I S I O N**

"When reviewing pretrial orders on motions to suppress evidence, [appellate courts] may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but legal determinations are reviewed de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

**I.**

The Fourth Amendment to the United States Constitution and Article I of the Minnesota Constitution prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). One such exception was recognized in *Terry v. Ohio*, which set forth the circumstances in which police may constitutionally "stop and frisk" suspicious

---

[1] A "*Lothenbach* proceeding" is a proceeding in which a defendant submits to a court trial on stipulated facts without waiving the right to appeal pretrial issues. *See State v. Lothenbach*, 296 N.W.2d 854, 857-58 (Minn. 1980) (approving this procedure). "Minn. R. Crim. P. 26.01, subd. 4, effective April 1, 2007, implements and supersedes the procedure authorized by [*Lothenbach*]." *State v. Antrim*, 764 N.W.2d 67, 69 (Minn. App. 2009).

persons without a warrant. 392 U.S. 1, 10, 88 S. Ct. 1868, 1874 (1968). Under *Terry*, police may "stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993).

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972). When determining whether an officer reasonably conducted a pat-frisk, "due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

Gray challenges the constitutional validity of Sergeant LaBarre's pat-frisk. Gray argues that the district court erred by not suppressing the cocaine because Sergeant LaBarre "(a) was searching for drugs not a weapon; (b) had no reason to believe Gray was armed and dangerous; and (c) exceeded the scope of a lawful weapons frisk."[2] We address each issue in turn.

---

[2] On appeal, Gray does not argue that he was illegally seized.

*Sergeant LaBarre's Subjective Intent*

Gray argues that Sergeant LaBarre's pat-frisk was invalid because although Sergeant LaBarre "claimed he was concerned Gray might have a weapon, he approached Gray and immediately searched the area he thought he had seen Gray conceal drugs." Gray's focus on Sergeant LaBarre's subjective reasons for the pat-frisk is misplaced. We assess Sergeant LaBarre's decision to pat-frisk Gray under an objective standard, as instructed by the United States Supreme Court in *Terry*.

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is *imperative that the facts be judged against an objective standard*: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?

*Id.* at 21-22, 88 S. Ct. at 1880 (emphasis added) (quotation omitted). We therefore do not speculate regarding Sergeant LaBarre's subjective reasons for the pat-frisk.

*Reasonable Belief Armed and Dangerous*

Gray argues that Sergeant LaBarre's pat-frisk was invalid because there was no reason to believe that he was armed and dangerous. An officer need not be absolutely certain that an individual is armed before conducting a pat-frisk; instead, the issue is whether a reasonably prudent officer in the circumstances would be justified in believing that his safety or that of others was in danger. *Id.* at 27, 88 S. Ct. at 1883. We must give

7

"due weight . . . to the specific reasonable inferences [that the officer] is entitled to draw from the facts in light of his experience." *Id.*

Sergeant LaBarre pat frisked Gray under the following circumstances. First, a CRI had told Officer Baumgart that a man named Larry would be driving a silver Dodge Charger with out-of-state license plates and selling "a large amount of cocaine" in St. Paul that day. When Sergeant LaBarre and Officer Baumgart first encountered Gray, he was driving a silver Dodge Charger with Ohio license plates. A consensual search of the Charger revealed a digital scale and sandwich bags. Approximately 20 minutes later, the officers saw the Charger in an area known for drug dealing, and Gray arrived in another vehicle after the officers stopped the Charger. Less than two hours later, the officers observed Gray engage in behavior that led them to believe that they had interrupted a drug deal. Although suspicion of drug dealing alone is insufficient to support a *Terry* frisk, it is a relevant circumstance. *Compare State v. Ingram*, 570 N.W.2d 173, 178 (Minn. App. 1997) (stating that drug dealing is not a type of crime that automatically gives police the right to frisk for weapons), *review denied* (Minn. Dec. 22, 1997), *with State v. Lemert*, 843 N.W.2d 227, 232 (Minn. 2014) (noting the "substantial nexus . . . between drug dealing and violence" and listing the defendant's presence in a vehicle with a "suspected drug dealer" as a circumstance that gave the officers a reasonable, articulable suspicion that the defendant might have been armed and dangerous).

Second, Gray was undeterred by his encounters with Sergeant LaBarre and Officer Baumgart. During the initial encounter, the officers asked Gray about drugs, searched the

Charger for drugs, found a digital scale and baggies, and told Gray and Sanders not to drive the vehicle because neither was licensed. Thirty-five minutes later, the officers observed Sanders driving the Charger at another location and pulled him over. During this second encounter, the officers once again warned Gray not to drive the vehicle. Less than two hours later, the officers saw the Charger in yet another location. Gray was standing next to the driver's door, beside a gas pump, engaged in what appeared to be a drug deal. The state persuasively argues that "the sheer brazen nature" of Gray's actions objectively supports a suspicion that he was armed and dangerous.

Third—and significantly—Gray made a furtive gesture when he observed the officers during the third encounter, moving his outstretched hand toward his hip or backside. The presence of a furtive gesture heavily influences a determination of whether a pat-frisk was lawful. *See State v. Alesso*, 328 N.W.2d 685, 688 (Minn. 1982) (holding that an officer reasonably could reach into defendant's pocket where "defendant made a furtive movement of his hand toward the pocket, causing the officer to suspect that he might be reaching for a weapon"); *State v. Richmond*, 602 N.W.2d 647, 651 (Minn. App. 1999) (holding that an officer had a reasonable suspicion to search in part because defendant made a "furtive movement" by reaching toward his car's passenger compartment), *review denied* (Minn. Jan. 18, 2000); *cf. State v. Varnado*, 582 N.W.2d 886, 890 (Minn. 1998) (concluding that a weapons search was not justified where, among other circumstances, the suspect did not make any furtive or evasive movements). Sergeant LaBarre testified that Gray could have been hiding a gun. That suspicion was objectively reasonable.

9

Given all of the circumstances and the reasonable inferences Sergeant LaBarre was entitled to draw from the facts in light of his experience, a reasonably prudent man in the circumstances would have been warranted in the belief that his safety or that of others was in danger. We therefore conclude that Sergeant LaBarre's pat-frisk of Gray was reasonable at its inception.

*Scope of the Pat-Frisk*

A pat-frisk must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S. Ct. at 1884. However, police may seize nonthreatening contraband detected during a pat-frisk under the plain-view doctrine, so long as the search "stays within the bounds marked by *Terry*." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136 (1993). "Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Id.* at 375, 113 S. Ct. at 2136-37. As applied in the pat-frisk context,

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375-76, 113 S. Ct. at 2137. The incriminating character of the item seized must be "immediately apparent," without the need to conduct "some further search of the object." *Id.* at 375, 113 S. Ct. at 2137.

Gray contends that Sergeant LaBarre "exceeded the scope of a lawful weapons frisk," arguing that Sergeant LaBarre "never satisfactorily explained how he could possibly determine by patting with an open hand that a quarter-size object wrapped in plastic and concealed underneath a pair of shorts and underwear and between a 305-pound man's butt cheeks was crack cocaine without squeezing, sliding or otherwise manipulating the object."

Gray's argument assumes that the cocaine was entirely concealed between his buttocks. The record and the district court's findings refute that assumption. Although the district court found that Gray was "clenching a small package of drugs in between his butt cheeks," the court also found that Gray "was only willing or able to get the drugs partially between his butt cheeks." The district court described the bag of drugs as "extending from between" Gray's buttocks, "protruding from" his buttocks, and "sticking out of" his buttocks. The district court found that the drugs were "not inside of [Gray's] anal cavity" and that the officers never "penetrate[d] [Gray's] anal cavity or even breach[ed] the outer limits of [his] butt cheeks." The district court noted that Gray's pants were "[sitting] low on [his] waist," "loose," and "baggie enough to allow access." Thus, the record refutes Gray's argument that Sergeant LaBarre must have somehow manipulated the object to discern its character. Instead, the record supports the district

11

court's finding that Sergeant LaBarre "immediately thought" that the object in Gray's buttocks "was a hard piece of crack cocaine" when he felt it.

Because the record does not suggest that Sergeant LaBarre conducted a search beyond the initial pat-frisk to determine that the object protruding from Gray's buttocks was contraband, we conclude that Sergeant LaBarre did not exceed the permissible scope of a lawful pat-frisk.

## II.

Gray also challenges Officer Baumgart's search incident to arrest, during which Officer Baumgart removed the cocaine from Gray's buttocks. Gray argues that "the district court should have suppressed the evidence because the search was not necessary for officer protection or to preserve evidence" and because Officer Baumgart "acted unreasonably by retrieving the cocaine . . . in a public rather than private setting."

A police officer may search "a person's body and the area within his or her immediate control," incident to a lawful arrest. *State v. Robb*, 605 N.W.2d 96, 100 (Minn. 2000.) "This exemption [to the warrant requirement] ensures officer safety by allowing officers to remove any weapons the arrestee might reach and also prevents the arrestee from tampering with or destroying evidence or contraband." *Id.* "[A] search incident to arrest is very broad in scope; it may include pockets, containers, and even the passenger compartment of automobiles." *Varnado*, 582 N.W.2d at 893.

Gray does not contest the legality of his arrest, but he suggests that Officer Baumgart's search incident to Gray's arrest was invalid, noting that "[t]he rationale for the search-incident-to-arrest exception is to ensure officer safety by removing weapons

12

and to prevent the destruction of evidence" and that "[t]he right to search incident to an arrest is not without limitation but is limited to those situations implicating the rationale for the exception."

Gray's suggestion that the search incident to his arrest was invalid because it was not necessary to remove weapons or prevent the destruction or concealment of evidence is unavailing. The Minnesota Supreme Court recently stated that the fact that a search of a person incident to arrest was not related to officer safety or to concerns regarding the destruction of evidence "[did] not compel the conclusion that the search-incident-to-arrest exception [did] not apply." *State v. Bernard*, 859 N.W.2d 762, 768 (Minn. 2015). The supreme court explained:

> There is no question that the [United States Supreme] Court has required either a concern for officer safety or a concern over the preservation of evidence to support the constitutionality of a warrantless search of the area where the defendant was arrested or a search of items near the defendant. But the Court has not applied these concerns as a limitation on the warrantless search of the body of a person validly arrested.

*Id*. at 769. The supreme court noted that the United States Supreme Court has "characterized a warrantless search of a person as categorically reasonable under the Fourth Amendment as a search incident to that person's valid arrest." *Id.* (citing *Missouri v. McNeely*, ___ U.S. ___, ___ n.3, 133 S. Ct. 1552, 1559 n.3 (2013)). The supreme court also noted that as recently as 2014, the United States Supreme Court reaffirmed "that searches of a person incident to arrest . . . are reasonable regardless of the probability in a particular arrest situation that weapons or evidence would in fact be

13

found." *Id.* at 770 (citing *Riley v. California*, ___ U.S. ___, ___, 134 S. Ct. 2473, 2485 (2014)).

In sum, the "categorical rule" recognized by the United States Supreme Court and our supreme court "allows a search of the person of [the] arrestee justified only by the custodial arrest itself." *Id.* Thus, Officer Baumgart's search of Gray need not be further justified by the rationale for the search-incident-to-arrest exception.

Gray also argues that even if Officer Baumgart's search was a valid search incident to arrest, Officer Baumgart unreasonably removed the cocaine from Gray's buttocks "in a public rather than private setting." The Fourth Amendment prohibits unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S. Ct. 1861, 1884 (1979).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S. Ct. at 1884.

Gray argues that Officer Baumgart's actions were unreasonable, relying on two foreign decisions that apply *Bell*'s analytical framework. The first case is *Amaechi v. West*, in which an officer arrested a woman "for a two-day old misdemeanor noise violation" and "proceeded to search by touching and penetrating [her] genitalia and kneading her buttocks with his ungloved hand." 237 F.3d 356, 361 (4th Cir. 2001). The search occurred while the woman "had on no underclothes" and was standing handcuffed

in the street "with her dress open and lower body exposed." *Id.* The Fourth Circuit held that the search was "highly intrusive without any apparent justification" and therefore unreasonable under the Fourth Amendment, even though it was conducted incident to a lawful arrest. *Id.* at 361-62.

The second case is *United States v. Ford*, in which a police officer stopped the defendant for having a cracked windshield and the defendant stated that he smoked marijuana earlier in the day. 232 F. Supp. 2d 625, 629-30 (E.D. Va. 2002). The officer "conduct[ed] a full-blown body cavity search for contraband" and "engaged in a highly invasive search by exposing the defendant's buttocks on the side of a public highway in broad daylight." *Id.* at 630. After feeling an item through the defendant's shorts during an initial outer search, the officer "put on latex gloves, pulled down the defendant's shorts and undergarments below his buttocks, and reached in between the defendant's buttocks to pull the item." *Id.* The federal district court concluded that the search was unreasonable under the Fourth Amendment and suppressed the evidence of the discovered contraband. *Id.* at 631.

*Amaechi* and *Ford* are readily distinguishable from this case. Here, the officers did not remove Gray's garments, did not expose Gray's buttocks to the public, and did not touch Gray's genitalia. As to the *Bell* factors, the scope and manner of the search suggests that it was reasonable. The officers did not remove or even lower Gray's pants. The bag of cocaine was protruding from Gray's buttocks, and Officer Baumgart removed the bag by grabbing the portion that was outside of Gray's buttocks. The search was not prolonged, except by Gray's own actions: Gray tried to make the removal more difficult

15

by tensing up, but Officer Baumgart was able to easily retrieve the drugs by briefly putting his hand inside the back of Gray's shorts. The search was justified because the officers acted to retrieve contraband. Although it would have been preferable to conduct the search in a more private location, the failure to do so does not render the search unreasonable given all of the circumstances. We conclude that the need for the search outweighed the invasion of Gray's personal rights and that the search therefore was reasonable.

In conclusion, neither Sergeant LaBarre nor Officer Baumgart violated Gray's constitutional right to be free from unreasonable search and seizure. Thus, the district court did not err by denying Gray's motion to suppress. We therefore affirm Gray's conviction, without addressing the state's alternative argument for affirmation.

**Affirmed.**