BARBARA MILANO KEENAN, Circuit Judge:
ON REHEARING
In 2014, David E. Abbott, a detective with the Manassas City Police Department in Virginia, investigated allegations that 17-year-old Trey Sims used his cellular telephone to send sexually explicit photographs and video recordings of himself to his 15-year-old girlfriend. During the *258 course of the investigation, Abbott obtained a search warrant authorizing photographs of Sims' naked body, including his erect penis. When Abbott executed the warrant, he allegedly demanded that Sims manipulate his penis to achieve an erection. Sims unsuccessfully attempted to comply with Abbott's order. The civil action before us is based on these alleged events.
Abbott died before the present case was filed. Sims therefore initiated this action against Kenneth Labowitz, the administrator of Abbott's estate under Virginia Code § 64.2-454 (the Administrator).[1] Sims asserted claims for damages under 42 U.S.C. § 1983, alleging that the search of his person violated his Fourth Amendment right of privacy or, alternatively, his right of substantive due process under the Fourteenth Amendment.[2] Sims also brought a claim for damages under 18 U.S.C. § 2255 alleging that, as a result of the search, he was the victim of manufactured child pornography in violation of 18 U.S.C. § 2251(a). The district court determined that the Administrator was entitled to qualified immunity on the Section 1983 claims, and accordingly dismissed that portion of Sims' action. The court also dismissed the remainder of Sims' complaint.
Upon our review, we vacate the district court's judgment with respect to the Section 1983 claim alleging a Fourth Amendment violation. Construing the facts in the light most favorable to Sims, a reasonable police officer would have known that attempting to obtain a photograph of a minor child's erect penis, by ordering the child to masturbate in the presence of others, would unlawfully invade the child's right of privacy under the Fourth Amendment. We therefore remand Sims' Section 1983 claim alleging a Fourth Amendment violation to the district court for further proceedings. We also vacate the district court's dismissal of Sims' claim for damages under 18 U.S.C. § 2255 as an alleged victim of child pornography, and remand that claim for consideration by the district court in the first instance. We affirm the district court's dismissal of Sims' remaining claims.
I.
Sims alleged the following facts, which we accept as true in our review of the district court's dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). See Zak v. Chelsea Therapeutics Int'l, Ltd. , 780 F.3d 597, 601 (4th Cir. 2015). In June 2014, the Commonwealth of Virginia filed felony charges against Sims as a juvenile for manufacturing and distributing child pornography in violation of Virginia Code §§ 18.2-374.1, *259 18.2-374.1:1. The charges arose based on Sims' conduct of "film[ing] a video of himself and fondling his erect penis" and sending the video to his minor girlfriend using his cellular telephone. After Sims declined to enter into a plea agreement, the Assistant Commonwealth's Attorney for Prince William County, Virginia, Claiborne T. Richardson, II, sought a nolle prosequi, and the juvenile court dismissed the charges against Sims.
The investigation against Sims continued and, at Richardson's direction, Abbott obtained a search warrant from a Virginia magistrate. The warrant authorized a search for "[p]hotographs of the genitals, and other parts of the body of [Sims] that will be used as comparisons in recovered forensic evidence from the victim and suspect's electronic devices. This includes a photograph of the suspect's erect penis."
Richardson and Abbott also obtained a detention order for Sims, which authorized Abbott to transport Sims from his home to a juvenile detention center. In a "locker room" in the center, Abbott and two uniformed, armed officers executed the search warrant. Abbott ordered Sims to "pull down his pants so that photos could be taken of his penis." After Sims complied, Abbott instructed Sims "to use his hand to manipulate his penis in different ways" to obtain an erection. However, Sims was unable to achieve an erection. Nonetheless, Abbott took photographs of Sims' flaccid penis using Abbott's cellular telephone.
The next day, Sims was arraigned on charges of possession and distribution of child pornography. Abbott informed Sims' attorney that Abbott again "proposed to take photographs of [Sims'] erect penis" to be used as evidence. Abbott also stated that if Sims could not achieve an erection, Sims would be taken "to a hospital to give him an erection-producing injection." Abbott obtained a second search warrant from a Virginia magistrate, which authorized additional photographs of Sims' naked body, including his erect penis.
Before the second search warrant was executed, however, the Manassas City Police Department issued a statement explaining that the department's policy did not permit "invasive search procedures of suspects in cases of this nature." Additionally, the Prince William County Commonwealth's Attorney, Paul B. Ebert, condemned the first search of Sims.
Sims' attorney filed a motion to quash the second search warrant. Before the juvenile court ruled on the motion, Richardson informed the court that the Commonwealth "would let the warrant expire without service." Richardson also stipulated that he would not use as evidence the photographs of Sims' penis that had been taken pursuant to the first search warrant.
After the juvenile court reduced the charges to felony possession of child pornography, the court found that the evidence was sufficient to convict Sims but did "not make a finding of guilt[ ]" and suspended imposition of sentence for one year. The court ordered Sims to comply with certain terms of probation, including performing 100 hours of community service, barring Sims from "access to social media," and prohibiting Sims from sending "text messages." After Sims completed the terms of his probation in August 2015, the court dismissed the charge against him.
The Administrator filed a motion to dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion, concluding that the Administrator was entitled to qualified immunity on the Section 1983 claims. The district court also dismissed Sims' claim for damages brought under *260 18 U.S.C. § 2255. Sims timely filed the present appeal.
II.
A.
We first consider Sims' argument that his right of privacy under the Fourth Amendment was violated when Abbott attempted to obtain a photograph of Sims' erect penis and ordered him to masturbate in the presence of others. Sims contends that any reasonable officer would have known that this conduct violated Sims' Fourth Amendment right of privacy and that, therefore, the Administrator was not entitled to the protection of qualified immunity.
In response, the Administrator maintains that Sims failed to allege sufficient facts to support a Fourth Amendment violation because Abbott's search did not place Sims at risk of physical harm, and because the search did not physically invade Sims' body. The Administrator alternatively contends that even if Abbott's conduct violated the Fourth Amendment, such right was not clearly established at the time of the search because Abbott acted pursuant to a validly issued search warrant. We disagree with the Administrator's arguments.
We review de novo the district court's dismissal of Sims' complaint on the ground of qualified immunity. Ridpath v. Bd. of Governors Marshall Univ. , 447 F.3d 292, 306 (4th Cir. 2006). As previously explained, we construe the facts alleged in the light most favorable to Sims. Id. at 309.
The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known. Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ; Graham v. Gagnon , 831 F.3d 176, 182 (4th Cir. 2016). Qualified immunity seeks to balance two interests, namely, the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Graham , 831 F.3d at 182 (quoting Pearson , 555 U.S. at 231, 129 S.Ct. 808 ). To avoid dismissal of a complaint after a qualified immunity defense is raised, a plaintiff must allege sufficient facts to set forth a violation of a constitutional right, and the court must conclude that this right was clearly established at the time of the alleged violation. Pearson , 555 U.S. at 232, 129 S.Ct. 808.
Although we may consider either prong of the qualified immunity inquiry first, we begin by examining the constitutional right advanced by Sims. See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst , 810 F.3d 892, 898-99 (4th Cir. 2016). This approach is beneficial here because our inquiry addresses "questions that do not frequently arise" and, therefore, "promotes the development of constitutional precedent." Pearson , 555 U.S. at 236, 129 S.Ct. 808.
The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California , 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
A search is lawful only when it is reasonable. Amaechi v. West , 237 F.3d 356 (4th Cir. 2001). When, as in the present *261 case, a search involves "movement of clothing to facilitate the visual inspection of a [person's] naked body," the search qualifies as a type of "sexually invasive search." United States v. Edwards , 666 F.3d 877, 882-83 (4th Cir. 2011) (citations omitted). To determine whether a sexually invasive search is reasonable, we employ the test adopted in Bell v. Wolfish , 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See King v. Rubenstein , 825 F.3d 206, 214-15 (4th Cir. 2016) ; Edwards , 666 F.3d at 883.
Under the Bell framework, we balance the invasion of personal rights caused by the search against the need for that particular search. 441 U.S. at 559, 99 S.Ct. 1861. Pursuant to Bell , we examine the search in its complete context and consider the following factors: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was performed. Id .
In the present case, the scope of the intrusion and the manner in which the search allegedly was performed involve overlapping inquiries. At the outset, we observe that a sexually invasive search "constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual." Wood v. Clemons , 89 F.3d 922, 929 (1st Cir. 1996) (citation omitted). Courts have described such searches, including strip searches, as terrifying, demeaning, and humiliating. Mary Beth v. City of Chicago , 723 F.2d 1263, 1272 (7th Cir. 1983) (citations omitted). When the scope of a search exceeds a visual inspection of an individual's naked body, the magnitude of the intrusion is even greater. See Amaechi , 237 F.3d at 363-64.
In King v. Rubenstein , we addressed the invasive nature and manner of a search of an inmate who was subjected to surgery to remove penile implants. 825 F.3d at 214-15. We explained that the surgery required cutting "beneath the skin into a sensitive, private body part," and involved "risk, trauma, and pain," as well as emotional anguish. Id. at 215. In holding that the inmate sufficiently alleged that the surgery was an unreasonable search under the Fourth Amendment, we stated that the nature of the surgery itself violated the inmate's "interest of bodily integrity," which "involves the most personal and deep-rooted expectations of privacy." Id. (citation omitted).
Although the intrusion suffered by Sims was neither physically invasive nor put him at risk of direct physical harm, the search nonetheless was exceptionally intrusive. First, as alleged by Sims, Abbott sought to do more than visually inspect Sims' genitalia. He attempted to photograph Sims' penis in a sexually aroused state. Further, the manner that Abbott employed to execute the warrant, namely, ordering Sims to masturbate to obtain an erection, required that Sims perform a sex act in the presence of three armed officers. Such alleged conduct necessarily invaded Sims' bodily integrity even though no part of Sims' body was penetrated or physically harmed. Abbott's search directed at forcing Sims to achieve an erection intruded "upon an area in which our society recognizes a significantly heightened privacy interest." See Winston v. Lee , 470 U.S. 753, 767, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). Requiring Sims to masturbate in the presence of others, like searches involving physical penetration of genitalia, constituted "the ultimate invasion of personal dignity." Amaechi , 237 F.3d at 363-64 ; see also King , 825 F.3d at 215.
Moreover, we observe that this sexually intrusive search was rendered more egregious *262 by being conducted in a manner that would instill fear in Sims. See Edwards , 666 F.3d at 884-85. Here, Sims alleged that he was "surrounded" by three armed officers as he questioned whether he was required to submit to Abbott's orders. Upon Abbott's insistence, Sims ultimately attempted to comply. Sims further alleged that the search caused him to suffer emotional harm. Winston , 470 U.S. at 761-63, 105 S.Ct. 1611 (explaining that intrusions without risk of physical harm nonetheless damage the individual's sense of personal privacy and security). Accordingly, both the outrageous scope of the sexually intrusive search and the intimidating manner in which the search was conducted weigh strongly against any finding that the search was reasonable.
Under the Bell framework, we next consider the justification for the search. See 441 U.S. at 559, 99 S.Ct. 1861. Abbott sought to obtain photographs of Sims' erect penis for an evidentiary purpose, namely, to compare these photographs with the forensic evidence obtained from the cellular telephones seized from Sims and his girlfriend. However, the Commonwealth ultimately agreed not to use the photographs of Sims' body as evidence, and the juvenile court nevertheless concluded that the evidence was sufficient to find that Sims had committed the offense of possession of child pornography. Thus, the record demonstrates that there was no evidentiary need to seek a photograph of Sims' erect penis. See Winston , 470 U.S. at 765-66, 105 S.Ct. 1611 (holding that because the prosecutor had substantial evidence available regarding the origin of the bullets sought to be extracted from the defendant via surgery, the need for surgery was reduced).
We cannot perceive any circumstance that would justify a police search requiring an individual to masturbate in the presence of others. See id. at 767, 105 S.Ct. 1611 (explaining that when searches intrude upon heightened privacy interests, a more substantial justification is required). Sexually invasive searches require that the search bear some discernible relationship with safety concerns, suspected hidden contraband, or evidentiary need. See Logan v. Shealy , 660 F.2d 1007, 1013 (4th Cir. 1981). Thus, we discern no justification for Abbott's alleged conduct executing the search of Sims' body, and we conclude that the semi-private location of the search did not mitigate the overall circumstances of this exceptionally intrusive search. Accordingly, we hold that Sims sufficiently alleged a violation of his Fourth Amendment right to be free from the sexually invasive search of his person.
We therefore turn to consider the second prong of the qualified immunity analysis, namely, whether Abbott should have known that his combined acts of (1) seeking to obtain a photograph of Sims' erect penis, and (2) demanding that Sims masturbate in the presence of others to achieve an erection, was unlawful under clear precedent at the time the search occurred. Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Id.
In this analysis, we review "cases of controlling authority in [this] jurisdiction, as well as the consensus of cases of persuasive authority from other jurisdictions." Amaechi , 237 F.3d at 363 (internal quotation and citation omitted). We observe that the "exact conduct at issue need not" previously have been deemed unlawful for the law governing an officer's actions to be clearly established. Id. at 362 (citing *263 Anderson , 483 U.S. at 640, 107 S.Ct. 3034 ). Instead, we must determine whether pre-existing law makes "apparent" the unlawfulness of the officer's conduct. Clem v. Corbeau , 284 F.3d 543, 553 (4th Cir. 2002) (quoting Anderson , 483 U.S. at 640, 107 S.Ct. 3034 ). "Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." Id. (internal quotation and citation omitted).
The Supreme Court and this Court have developed an entire body of jurisprudence establishing limits on sexually intrusive searches. This precedent has made clear that when a search of a person's body would significantly invade that individual's right of privacy, the basis for the search requires greater justification under the Fourth Amendment. Winston , 470 U.S. at 767, 105 S.Ct. 1611 ; see, e.g. , Florence v. Bd. of Chosen Freeholders of Cty. of Burlington , 566 U.S. 318, 330-38, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012) (holding that invasive search procedures at jail struck a reasonable balance between inmate privacy and the security needs of the institutions); Illinois v. Lafayette , 462 U.S. 640, 645, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (explaining that an officer cannot disrobe an arrestee publicly without justifying factors); Bell , 441 U.S. at 558-60, 99 S.Ct. 1861 (holding that practice of conducting visual body-cavity searches of inmates following contact visits did not violate the Fourth Amendment because of significant security interests); King , 825 F.3d at 217 (determining that inmate sufficiently alleged Fourth Amendment violation based on surgery to remove penile implants because there was no penological justification); Edwards , 666 F.3d at 884-85 (concluding that sexually invasive search was unlawful because dangerous manner in which the officer removed contraband outweighed interest in retrieving contraband); Amaechi , 237 F.3d at 365-66 (finding no justification for officer's pat down search to include touching arrestee's buttocks and penetrating her exposed genitalia); Logan , 660 F.2d at 1013 (holding that inmate's strip search bore no relationship to security needs at detention center).[3] And here, as we already have explained, there was neither an evidentiary justification for the alleged search to obtain a photograph of Sims' erect penis, nor could there have been a valid reason for demanding that Sims masturbate in the presence of others.
We observe, nevertheless, that there are state and federal district court decisions involving circumstances in which officers lawfully conducted searches to visually inspect a suspect's penis. See Curtis v. Clarke , 2012 WL 2342536, at *2 (E.D. Va. June 19, 2012) ; Mata v. Hubbard , 2011 WL 6210668, at *8 (C.D. Cal. Oct. 25, 2011) ; Roadcap v.Commonwealth , 50 Va.App. 732, 653 S.E.2d 620, 622-23 (2007) ; Willis v. Commonwealth , 1997 WL 39801, at *2 (Va. Ct. App. Feb. 4, 1997). However, the searches in these cases were justified by an evidentiary need to confirm certain characteristics of the perpetrator's genitalia, and none of the searches required that the individual achieve an erection or masturbate in the presence of others. Thus, the type of search conducted here by Abbott far exceeded the intrusions into privacy *264 described in those state and federal district court decisions.
Additionally, the fact that Sims was a minor child at the time of the alleged events should have caused a reasonable officer even greater concern in seeking a warrant and in executing the sexually invasive search. The Supreme Court has explained that minors are more susceptible than adults to influence and psychological damage. See Eddings v. Oklahoma , 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (recognizing that youth is mitigating factor in defendant's commission of crime). Accordingly, officials taking minors into custody must "preserv[e] and promot[e] the welfare of the child." Schall v. Martin , 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (citation omitted). In conducting sexually invasive searches of minors, officials must employ extreme caution because minors are "especially susceptible to possible traumas" affiliated with such searches. N.G., S.G. ex rel. S.C. v. Connecticut , 382 F.3d 225, 244 (2d Cir. 2004) (citation omitted). Thus, Abbott should have been aware that any assessment of the legality of a sexually invasive search of a 17-year-old required additional considerations based on the child's age.
Because there was no justification for the alleged search to photograph Sims' erect penis and the order that he masturbate in the presence of others, we conclude that well-established Fourth Amendment limitations on sexually invasive searches adequately would have placed any reasonable officer on notice that such police action was unlawful. See Amaechi , 237 F.3d at 365. Thus, the alleged conduct plainly did not qualify as the type of "bad guesses in gray areas" that qualified immunity is designed to protect. Braun v. Maynard , 652 F.3d 557, 560 (4th Cir. 2011) (quoting Maciariello v. Sumner , 973 F.2d 295, 298 (4th Cir. 1992) ).
We further observe that the Administrator is not entitled to invoke qualified immunity simply because no other court decisions directly have addressed circumstances like those presented here. See Clem , 284 F.3d at 553. For good reason, most outrageous cases of constitutional violations rarely are litigated. See K.H. ex rel. Murphy v. Morgan , 914 F.2d 846, 851 (7th Cir. 1990) (explaining that never before had there been a case accusing welfare officials of selling foster children into slavery, but those officials nevertheless would not be entitled to immunity). Abbott's conduct affronted the basic protections of the Fourth Amendment, which at its core protects personal privacy and dignity against unjustified intrusion by governmental actors. See Schmerber , 384 U.S. at 767, 86 S.Ct. 1826.
Our conclusion is not altered by the Administrator's insistence that Abbott's conduct was not unlawful because he first obtained a warrant to take a photograph of Sims' erect penis. As a general matter, search warrants provide officers a "shield of immunity" with respect to challenged searches because a neutral magistrate has considered whether the warrant is supported by probable cause and justifies the intrusion into an individual's privacy. See Messerschmidt v. Millender , 565 U.S. 535, 547, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). But the fact that a search warrant has been obtained "do[es] not confer immunity if it was objectively unreasonable" for the officer to rely on the warrant. See Graham , 831 F.3d at 183 (citations omitted) (discussing arrest warrant). Here, the obvious, unconstitutional invasion of Sims' right of privacy that was required to carry out the warrant rendered reliance on that warrant objectively unreasonable, thereby eliminating the protection that a search warrant typically would have afforded *265 an executing officer.[4] See Malley v. Briggs , 475 U.S. 335, 341, 346 n.9, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). For these reasons, we conclude that the district court erred in dismissing Sims' Section 1983 Fourth Amendment claim on the ground of qualified immunity.[5]
B.
Finally, Sims argues that the district court erred in dismissing his claim for damages under 18 U.S.C. § 2255 as a child victim of an enumerated felony offense, namely, sexual exploitation of a child in violation of 18 U.S.C. § 2251(a). Because Section 2255 requires factual allegations supporting a violation of a criminal statute, this separate claim for damages stands in contrast to the civil deprivation of constitutional rights described above and actionable under 42 U.S.C. § 1983.
The district court did not address Sims' claim under Section 2255 in its memorandum opinion, but simply dismissed Sims' complaint in its entirety. Under the procedural posture of this case, we conclude that the district court should consider in the first instance Sims' claim under Section 2255. Accordingly, we vacate the dismissal of that claim, and remand for consideration of that claim by the district court.
III.
For these reasons, we vacate the district court's ruling that the Administrator was entitled to qualified immunity on the Section 1983 claim alleging a Fourth Amendment violation, and we remand this claim to the district court for further proceedings. We also vacate the dismissal of Sims' claim under Section 2255 and remand that claim for consideration by the district court in the first instance. We affirm the district court's dismissal of Sims' remaining claims.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED

Sims also named the Assistant Commonwealth's Attorney for Prince William County, Virginia, Claiborne T. Richardson, II, as a defendant. The district court granted Richardson's motion to dismiss, holding that Richardson was absolutely immune from suit because his conduct was performed in the course of his prosecutorial duties. Sims does not challenge this aspect of the district court's judgment.

Sims also alleged additional Section 1983 claims: (1) that his rights under the Fourth Amendment were violated based on the detention order authorizing the removal from his home to the detention center; and (2) that Richardson and Abbott conspired to interfere with Sims' constitutional rights. Sims does not challenge the district court's dismissal of these claims on appeal. Sims advanced a final Section 1983 claim, namely, that Abbott's threat to forcibly inject Sims with erection-producing medication violated the Fourteenth Amendment's substantive due process clause. We conclude that the district court did not err in dismissing this claim, because mere verbal threats directed toward Sims' attorney did not rise to the level of a constitutional violation with respect to Sims.

As the dissent points out, most of the decisions addressing the legality of sexually invasive searches do not involve searches conducted pursuant to warrants. But this distinction only highlights the plainly unreasonable nature of the search in the present case, because sexually invasive searches typically occur in the context of exigent circumstances.

Additionally, apart from the issue whether the warrant was objectively reasonable, the warrant did not purport to authorize Abbott's conduct of requiring Sims to masturbate in the presence of the officers.

We reject Sims' alternative argument that the Administrator was not entitled to qualified immunity because Abbott's conduct surrounding the search "shocks the conscience," in violation of the Fourteenth Amendment's substantive due process clause. The "Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." Safar v. Tingle , 859 F.3d 241, 245 (4th Cir. 2017) (considering under Fourth Amendment arrestees' Section 1983 claims against police officers based on allegedly unconstitutional arrest warrant).